1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Jorge Alegre Gonzalez, et al.,           )    No. CV 06-2485-PHX-MHM
                                             )
10              Plaintiffs,                   )    **ORDER**
                                             )
11  vs.                                       )
                                             )
12                                            )
    Tanimura & Antle, Inc.,                   )
13                                            )
                Defendant.                    )
14                                            )
                                             )
15  _____ )
                                             )

16

17          Currently before the court is Plaintiffs' Motion to Alter or Amend the Judgment FRCP

18  59(e) (Dkt.#121) and Defendant's Motion for Reconsideration (Dkt.#123).  Each is addressed

    below.  The underlying facts are explained at length in the Court's Order dated September
19
    30, 2008 (Dkt.#119) and are not repeated here.
20
    **I.     Plaintiffs' Motion to Alter or Amend the Judgment**
21
            **A.     The Standard**
22
            Though the Rules do not identify the proper standard for a Rule 59(e) Motion to Alter
23
    or Amend the Judgment, the Ninth Circuit has explained that "[a] motion for reconsideration
24
    under Rule 59(e) 'should not be granted, absent highly unusual circumstances, unless the
25
    district court is presented with newly discovered evidence, committed clear error, or if there
26
    is an intervening change in the controlling law.'" *McDowell v. Calderon*, 197 F.3d 1253,
27

28

1   1255 (9th Cir.1999) (per curiam) (en banc) (quoting *389 Orange St. Partners v. Arnold*, 179

2   F.3d 656, 665 (9th Cir.1999)).

3   **B.   Analysis**

4   Plaintiffs urge the Court to reconsider that portion of its ruling that held that A.R.S.

5   § 23-353 was not violated because it pertained to the payment of wages for an employee who

6   is discharged or quits.  Since Plaintiffs had failed to prove that they had been discharged or

7   had quit, the Court granted summary judgment as to this claim.  (Dkt.# 121; Dkt.#119 at 25-

8   26)  Plaintiffs now argue that Arizona's Wage Payment Act entitles all employees to their

9   proper wages regardless of their employment status and cite to A.R.S. § 23-351(c) to support

10  this assertion.  However, Plaintiffs never made this argument in their original motion.  After

11  Defendant contended that A.R.S. § 23-353 only applied to employees who are discharged or

12  quit in its  motion for summary judgment (Dkt.#51 at 15), Plaintiffs failed to respond to this

13  argument, did not cite to any portion of the Arizona Statutes, and appeared to concede this

14  point.   (Dkt.#84)    Plaintiffs now point to A.R.S. § 23-351(c) in their motion for

15  reconsideration for the first time and without any explanation for their tardiness.

16  While it may be true that section 352(c) protects employees who have not been

17  discharged or quit, this argument was not presented to the Court in a timely manner.  As

18  such, it is a new theory of relief; however, "new arguments and new legal theories that could

19  have been made at the time of the original motion may not be offered in a motion for

20  reconsideration." *Garber v. Embry-Riddle Aeronatuical University*, 259 F.Supp.2d 979, 982

21  (D. Ariz. 2003).

22  For the similar reasons, Plaintiffs' alternative argument that there was undisputed

23  evidence that they  were seasonal workers and the season had ended also fails.  Plaintiffs

24  never made this argument in their original Response.   Nor have they provided any

25  explanation for their delay.  These legal arguments and facts were previously available and

26  should have been raised by Plaintiffs during the summary judgment briefing.  Rule 59 "is not

27  intended to allow a movant to raise additional theories that it failed to advance in connection

28  with the underlying decision." *Renda Marine, Inc. v. U.S.*, 71 Fed. Cl. 782, 786-87 (Fed. Cl.

2006); *see also Frietsch v. Refco., Inc.*, 56 F.3d 825, 282 (7th Cir. 1995) ("It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him.").

For these reasons, Plaintiffs' Motion to Alter or Amend the Judgment (Dkt.#121) is denied. (Dkt.#121)

## II.   Defendant's Motion for Reconsideration (Dkt.#123)

### A.   The Standard

According to Local Rule of Civil Procedure 7.2(g), "The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence."  A motion for reconsideration is properly granted "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir. 2007).

### B.   Analysis

Defendant urges this Court to reconsider the portion of its prior Order that held that Defendant violated the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801 et seq. (the "MSAWPA"), by failing to include the group production incentive ("GPI") rate on Plaintiffs' itemized pay statements. (Dkt. #123 at 1)  Plaintiffs were paid the greater of a guaranteed hourly wage or the group incentive bonus that was based on the number of boxes, cartons, or other units of lettuce or broccoli that were picked.  The pay stubs included the total GPI bonus, but did not include the rate at which the GPI was paid. Defendant argued previously that the GPI rate was disclosed to each of the harvesters in writing at the beginning of the season and that the workers were notified in advance of any GPI rate changed during the season.  It further argued that the GPI rate was posted on company buses and provided in the bulletin binder.  However, the Court found that the GPI rate reflected "a basis on which wages were paid" and as such, had to be included on pay statements. 29 U.S.C. § 1831(c)(1)(A).  Because the pay statements did not include the GPI

1   rate, the Court granted partial summary judgment to Plaintiffs on their Second Cause of

2   Action.

3          Defendant argues that new evidence establishes that the pay statements fully comply

4   with the MSAWPA.  Specifically, it points to the results of a five month long "investigation

5   and wage and hour audit" of Defendant's employment practices that was conducted by the

6   Department of Labor ("DOL").  According to Defendant, "The DOL concluded that the

7   itemized pay statements provided by Defendant to its harvest employees, including Plaintiffs,

8   fully comply with the Migrant and Seasonal Worker Protection Act."  (Dkt.#123 at 4)

9   Defendant also cites to various sections of the Code of Federal Regulations  (29 C.F.R. §§

10  500.1(e), 500.140, and 500.7) that charge the DOL with enforcing the MSAWP and argue

11  that the DOL investigations and audits are relevant and admissible to show the employer's

12  compliance with the law.

13         While the Court agrees that the DOL appears to be the primary governmental agency

14  charged with enforcing the act, and has no doubt that the results of the DOL's investigation

15  could theoretically be persuasive evidence of compliance, it finds no evidence to suggest that

16  the DOL considered the issue of whether GPI rates should be included in a pay statement

17  during the course of its audit of Defendant's records.

18         All that Defendant has presented to the Court is a one-page "Potential MSPA

19  Violations Checklist" and which has a number of possible violations listed generally in the

20  left-hand column.   As it relates to this issue, listed under the general category

21  "Recordkeeping" there are four subcategories, including "Failure to make/keep employer

22  records," "Failure to provide wage statement to workers," "Failure to provide records to

23  growers," and "Failure to maintain records provided by FLC."  None of the boxes to the right

24  of these categories is checked.  On this basis, Defendant implies that the DOL *must* have

25  considered the GPI rate issue and *must* have found that including the GPI rate on a pay stub

26  was not required.

27         However, none of these subcategories say anything about what *kind* of records must

28  be given to the workers; the checkbox appears to merely consider whether  records were

- 4 -

given or not.  Nothing in the evidence that has been presented to the Court suggests that the DOL squarely faced this issue and decided that the GPI rate was not required.  Defendant refers to no written report detailing the DOL methodology or what was considered during its investigation.   The most likely explanation is that it was never raised to the DOL and that the DOL never considered it.   While it may be true that one of Defendant's pay statements not containing an itemized GPI rate was submitted to the DOL and found to be compliant, there is simply no indication whatsoever to indicate that the DOL even considered whether GPI rates were required to be listed on pay statements because they fit the statutory definition of "a basis on which wages are paid" under 29 U.S.C. § 1831(c)(1)(A).

Plaintiffs argue that Defendant should have raised this information earlier.  However, Defendant concluded its briefing on this matter on January 24, 2008 and the DOL results were not available until September 3, 2008.  While the Defendant theoretically could have filed a supplement to the briefing before the Court's ruling on September 30, 2008, the Court does not find its delay to be so inexcusable that the passage of time alone would bar this argument.   Defendant filed its motion for reconsideration on October 15, 2008, approximately one month after receiving the new evidence and only 15 days after the Court's ruling.  The fact that Defendant had previously been investigated and found compliant does not in itself prevent Defendant from raising evidence related to its most recent investigation that was not available at the time of briefing.

However, because Defendant provided no information regarding the basis of the DOL's investigation or its methodology in conducting the audit, the Court has no reason to find that the DOL specifically considered the issue of GPI rates and therefore stands by its original decision that as "a basis on which wages are paid," the GPI rate(s) must be included on a pay statement under 29 U.S.C. § 1831(c)(1)(A). Defendant's motion for reconsideration is therefore denied.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Plaintiffs' Motion to Alter or Amend the Judgment.  (Dkt. #121)

1     **IT IS FURTHER ORDERED** denying Defendant's Motion for Reconsideration.

2  (Dkt. #123)

3     **IT IS FURTHER ORDERED** setting this matter for Status Hearing on June 22, 2009

4  at 4:00 p.m.

5     DATED this 20th day of May, 2009.

Mary H. Murguia
United States District Judge